UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HOLLY M. HANDLON

        Plaintiff,

Case No. 10-13710

v.                                           Honorable Paul D. Borman
                                              United States District Judge

RITE AID SERVICES, LLC and
TIMOTHY MICHAEL TEVIS

        Defendants.

_____/

## OPINION AND ORDER
## GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on Defendants' Motion for Summary Judgment. The Court held a hearing on January 30, 2012. For the reasons that follow, the Court GRANTS Defendants' Motion for Summary Judgment.

**I.    INTRODUCTION**

Holly Handlon ("Plaintiff") worked in the Pharmacy of the Rite Aid Store #4574 in Port Huron, Michigan (Defendant "Rite Aid") from June of 2008 to mid-October of 2009. In August of 2009, several Rite Aid employees reported to management that a staff pharmacist, Joe Carpenter, was acting strangely at work and that he would come into the pharmacy when he was not working, displaying the same type of odd behavior. Based on the reports, Rite Aid management was concerned that Carpenter might be stealing controlled substances from the pharmacy. The District

1

Loss Prevention Manager, Timothy Tevis (Defendant "Tevis"), and the District Pharmacy Manager, Scott Kroczolowski ("Mr. K."), established surveillance on Rite Aid's pharmacy. Defendant Tevis installed a hidden video camera in the pharmacy to monitor for theft by employees. Additionally, Mr. K. visited Rite Aid after hours to manually count the controlled substance Mr. K. believed most likely to be stolen to establish a starting point for future inventories.[1]

A subsequent count of showed that Rite Aid was missing approximately 500 hydrocodone pills. Based on the timing of the counts, management was able to deduce that the pills were taken sometime between September 7 and September 9, 2009. Tevis reviewed footage from the surveillance camera and noticed what Tevis described as suspicious activity by Plaintiff. The surveillance video shows Plaintiff placing a bottle of hydrocodone into an empty box and walking out of the pharmacy area into the employee locker area with the box pressed against her chest. Tevis documented his suspicions in the investigation file and decided to add three additional surveillance cameras.

During the same time period, Mr. K.'s audits showed significant hydrocodone shortages, so Tevis continued to review the surveillance videos to determine what was happening to the hydrocodone. Tevis reviewed footage from September 22, 2009 and noticed what Tevis again described as suspicious activity by Plaintiff. Tevis reviewed the video with Mr. K. and both agreed that the video showed Plaintiff placing two bottles of hydrocodone into an empty box and taking that box along with another box out of the pharmacy area and into the employee locker area. Plaintiff then took one of the boxes out of camera view in the employee locker area, and then returned to

---

[1] Plaintiff questions the veracity of the counts, but whether pills were actually missing is irrelevant.

camera view to throw out the box. Plaintiff then exited Rite Aid during her shift with a rolled-up cashier's apron in her hand. Plaintiff re-entered Rite Aid with the cashier's apron now dangling.

After reviewing the video from September 22, 2009, Tevis, Mr. K., and Human Resource Manager, Paul Yunker, decided to call in Plaintiff for an interview. On October 7, 2009, Tevis met with Plaintiff in the Rite Aid's Manager's Office. Katherine Taylor, one of Plaintiff's co-workers, was present at the meeting at Tevis's request. Tevis informed Plaintiff that Rite Aid had observed her on video stealing drugs, and that the police would be involved. Plaintiff then stood up, said, "then call the police," and left Rite Aid. Tevis then called the police to file a criminal complaint. Tevis met with Port Huron Officer Thomas Rumley and informed him of the hydrocodone shortages and the surveillance videos. Officer Rumley was under the impression that Plaintiff had stolen the hydrocodone pills that day. The police subsequently arrested Plaintiff approximately forty-five minutes later, off-site, for embezzlement.

The day after Plaintiff was arrested, she called Rite Aid to determine if she had been fired. The assistant manager initially told Plaintiff that she was terminated for stealing pills, but two hours later called Plaintiff and informed her that she had not been terminated, but rather suspended pending investigation. Plaintiff then called Tevis to meet off-premises. Tevis told Plaintiff that it was against company policy to meet off-premises, but that Tevis was willing to meet Plaintiff at the Rite Aid store. Plaintiff refused to meet Tevis at Rite Aid, and thereafter Plaintiff was terminated.

## II. STANDARD OR REVIEW

Pursuant to Federal Rule of Civil Procedure 56, a party against whom a claim, counterclaim, or cross-claim is asserted may "at any time, move with or without supporting affidavits, for a summary judgment in the party's favor as to all or any part thereof." Fed. R. Civ. P. 56(b).

Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Of course, [the moving party] always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323; *see also Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987).

A fact is "material" for purposes of a motion for summary judgment where proof of that fact "would have [the] effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (quoting Black's Law Dictionary 881 (6th ed. 1979)) (citations omitted). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Conversely, where a reasonable jury could not find for the nonmoving party, there is no genuine issue of material fact for trial. *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir. 1993). In making this evaluation, the court must examine the evidence and draw all reasonable inferences in favor of the non-moving party. *Bender v. Southland Corp.*, 749 F.2d 1205, 1210-11 (6th Cir. 1984).

If this burden is met by the moving party, the non-moving party's failure to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," will mandate the entry of summary judgment. *Celotex*, 477 U.S. at 322-23. The non-moving party may not rest upon the mere allegations or

4

denials of his pleadings, but the response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts which demonstrate that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). The rule requires the non-moving party to introduce "evidence of evidentiary quality" demonstrating the existence of a material fact. *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997); *see also Anderson*, 477 U.S. at 252 (holding that the non-moving party must produce more than a scintilla of evidence to survive summary judgment).

### III. ANALYSIS

#### A. False Arrest and False Imprisonment

Plaintiff alleges that Defendant Tevis "[m]aliciously, intentionally, grossly negligently and/or negligently misrepresented facts for the purpose of arresting the Plaintiff or having the Plaintiff arrested." (Compl. ¶24b) In connection with this allegation, Plaintiff alleges that she was falsely arrested and falsely imprisoned.

The Court must first determine whether there was probable cause to arrest Plaintiff, because it "is well-settled in Michigan that an arrest based on probable cause is sufficient to defeat a claim of false imprisonment." *Rueckert v. City of Flint*, 997 F.Supp 856, 865 (E.D. Mich. 1998); *see also Ahlers v. Schebil*, 188 F.3d 365, 374 (6th Cir. 1999) ("Liability for false arrest and false imprisonment attaches only when the claimant is arrested without probable cause. *Lewis v. Farmer Jack Div., Inc.*, 415 Mich. 212, 218 (Mich. 1982)").

Probable cause exists where the facts and circumstances within an officer's knowledge and of which he has reasonable trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed. *People v. MacLeod*, 254 Mich. App. 222, 227-28 (2002) (citing *People v. Champion*, 452 Mich. 92, 115

(1996)). In the instant case, Officer Rumley received a call from central dispatch stating that there was a complainant who had developed information that an employee was stealing prescription medication. When Officer Rumley arrived at the scene, Rite Aid's District Loss Prevention Manager, Defendant Tevis, informed Officer Rumley that he believed that Plaintiff had stolen hydrocodone pills from Rite Aid on multiple occasions, and that Defendant Tevis had the incidents on tape. The information Defendant Tevis provided to Officer Rumley was sufficient to give Officer Rumley probable cause to arrest Plaintiff, thus defeating Plaintiff's false arrest and false imprisonment claims. *See Ahlers*, 188 F.3d 365 at 374.

Plaintiff contends probable cause did not exist to arrest Plaintiff because Defendant Tevis provided Officer Rumley with false information. Although there is a genuine issue of material fact as to whether Defendant Tevis supplied false information to Officer Rumley that Tevis had seen Plaintiff take hydrocodone on the date Officer Rumley met with Defendant Tevis, it does not prevent the Court from granting Defendants' Motion for Summary Judgment on this issue.[2] The applicable standard for challenging the validity of an arrest based on a private citizen's statement is the same as the standard for when an individual challenges the validity of a warrant premised on attacking a police officer's sworn statement: the challenger must make a showing that the statement was deliberately false or made with a reckless disregard for the truth. *Najor v. Liut*, 2011 WL 891101 at *3 (Mich. App. 2011) (citing *Franks v. Delaware*, 438 U.S. 154, 171 (1978)). Even if the challenger can make such a showing, however, the challenge will fail if there remains sufficient content in the statement to support a finding of probable cause when the material that is the subject

---

[2] The Court notes that Officer Rumley did not testify that Tevis told him that Plaintiff had stolen pills that day, but rather that it was Officer Rumley's impression that Plaintiff had stolen pills that day based upon what Tevis told him.

6

of the alleged falsity or reckless disregard is set to one side. *Id.* (citing *Franks*, 438 U.S. at 171-72).

When disregarding the alleged statement by Tevis to Officer Rumley that Plaintiff had stolen pills that day, there still exists probable cause for an arrest. The information provided by Defendant Tevis other than the alleged false statement, under his authority and position as District Loss Prevention Manager, was sufficient for Officer Rumley to arrest Plaintiff. As such, Plaintiff's claim for false arrest and false imprisonment must fail.[3]

This Court notes the recent Sixth Circuit decision, *Donald v. Sybra, Inc.*, __F.3d__, 2012 WL 117613 (6th Cir. Jan. 17, 2012):

> The remainder of Donald's arguments address the accusation of theft. She vociferously denies the allegation, and argues that there are reasons as to why orders may have irregularities and why her drawer may have been short. This is irrelevant. We have adopted the honest belief rule, reasoning that it is not in the interests of justice for us to wade into an employer's decisionmaking process. It is instead the employer's belief, and whether it is informed and nondiscriminatory, with which we are concerned. We do not require that the employer arrived at its decision in an optimal manner, but that it reasonably relied on the particularized facts that were before it at the time the decision was made.

Slip Op. at p. 8 (citations omitted).

### B. Defamation

The elements of a defamation claim are (1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged communication to a third party, (3) fault amounting to at least negligence on the publisher's part, and (4) actionability of the statement irrespective of special harm or the existence of special harm caused by publication. *Mitan v. Campbell*, 474 Mich. 21, 24 (2005). A claim for defamation must be specifically pled. *Ledl v. Quik Pik Food Stores, Inc.*, 133 Mich.

---

[3] Additionally, if Defendant Tevis had reasonable cause to believe that Plaintiff stole an amount of hydrocodone that Rite Aid offers for sale at a price of $200.00 or more, Defendant Tevis was authorized to arrest Plaintiff under MCL 764.16.

7

App. 583, 589 (1984). Plaintiff has failed to allege a cause of action because she has not alleged where or to whom the statements were published. *See Hernden v. Consumers Power Co.*, 72 Mich. App. 349, 356-57 (1976). The Court, however, where possible and practical, resolves issues on the merits where doing so would not prejudice any party.

In her Response to Defendants' Motion for Summary Judgment, Plaintiff contends that when Defendant Tevis told Officer Rumley that Plaintiff stole drugs from Rite Aid, Defendant Tevis published a defamatory statement to a third party. Defendants counters with the proposition that statements made by a citizen to a police officer have been held to be absolutely privileged. The Court notes that there is authority supporting Defendants' proposition, *see, e.g. Irish v. Beck*, 2009 WL 3051470 (Mich. App. 2009), but finds that statements made by a citizen to a police officer are protected by a qualified privilege, rather than an absolute privilege. *See Smith v. Primco Management Corp.*, 1997 WL 33344476 at *3 (Mich. App. 1997) (concluding that no more than a qualified privilege attaches to communications made to police officers concerning criminal activity.); *see also Doe v. Tecumseh Public Schools*, 2007 WL 2875245 at *4 (E.D. Mich. 2007); *Sanders v. Stanley*, 2011 WL 1883038 at *7 (E.D. Mich. 2011) (finding it unlikely the Michigan Supreme Court would find that intentionally false statements to police officers about an individual's involvement in a crime are not actionable.).

To overcome the qualified privilege that attached to Defendant Tevis's statements to Officer Rumley, Plaintiff must come forward with evidence that Defendant Tevis made the statements with actual malice. Because Plaintiff has not presented any evidence that Defendant Tevis made the statements with actual malice, Plaintiff's defamation claim fails.

8

**C.     Discrimination**[4]

Plaintiff alleges that she was discriminated against because her children are biracial. The ultimate question in every case alleging disparate treatment on the basis of race is "whether the plaintiff was the victim of intentional discrimination." *Curry v. SBC Commc'ns, Inc.*, 669 F.Supp.2d 805, 824 (E.D. Mich. 2009) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 153 (2000)). To establish intentional discrimination, a plaintiff must demonstrate direct evidence of discrimination or indirect evidence of discrimination by presenting sufficient circumstantial evidence to allow an inference of discrimination. *Id.*

Direct evidence does not require the fact-finder to draw any inferences. *Id.* at 825 (quoting *In re Rodriguez*, 487 F.3d 1001, 1007 (6th Cir. 2007)). "Evidence of discrimination is not considered direct evidence unless [an improper] motivation is explicitly expressed." *Amini v. Oberlin College*, 440 F.3d 350, 359 (6th Cir. 2006). Here, Plaintiff has not presented any direct evidence of discrimination.

Even without direct evidence, Plaintiff can prevail if she can establish an inferential case of discrimination under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Curry*, 669 F.Supp.2d at 824-25. Under *McDonnell Douglas*, as clarified by *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981), Plaintiff must first prove a *prima facie* case of discrimination. *Burdine*, 450 U.S. at 252-53; *Kline v. Tenn. Valley Auth.*, 128 F.3d 337, 342 (6th Cir. 1998).

---

[4] The Sixth Circuit reviews claims of discrimination brought under the Elliot Larsen Civil Rights Act (ELCRA) under the same standard as claims brought under Title VII. *Idemudia v. J.P. Morgan Chase*, 434 F.App'x 495, 499 (6th Cir. 2011). Plaintiff claims discrimination under both Title VII and the ELCRA. Therefore, the Court analyzes Plaintiff's discrimination claims under the same framework

A plaintiff establishes a *prima facie* case of discrimination by demonstrating that (1) she is a member of a protected group, (2) she was subject to an adverse employment decision, (3) she was qualified for the position, and (4) she was treated differently than similarly situated employees. *Chambers v. City of Detroit*, 786 F.Supp.2d 1253, 1263 (E.D. Mich. 2011) (citing *Russell v. Univ. of Toledo*, 537 F.3d 596, 604 (6th Cir. 2008)).

Determining that Plaintiff has established the first three prongs of the analysis does not require much discussion. Plaintiff is a member of a protected group because she has biracial children. *Tetro v. Elliot Popham Pontiac, Oldsmobile, Buick & GMC Trucks, Inc.*, 173 F.3d 988, 994 (6th Cir. 1999). Plaintiff was subject to an adverse employment decision because she was fired.[5] Plaintiff was qualified for the position, as demonstrated by her performance evaluation.

Plaintiff, however, has failed to establish the fourth prong of the analysis: she cannot show that she was treated differently than similarly situated employees. Plaintiff contends that Mr. Carpenter is the similarly situated employee who received more favorable treatment. Plaintiff points to the fact that Defendants called the police about Plaintiff stealing hydrocodone, but did not call the police regarding Mr. Carpenter suspected theft. Calling the police, however, is not considered an adverse employment action because it did not affect the terms of her employment. *See Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 885 (6th Cir. 1996). Moreover, while Rite Aid management suspected Plaintiff of stealing a large quantity of a controlled substance, Rite Aid management suspected Mr. Carpenter of stealing a small amount of a non-controlled substance.

---

[5] Plaintiff also contends that Rite Aid reduced Plaintiff's hours. Plaintiff, however, testified that she worked hours in the front of the store when her hours in the pharmacy area were reduced. Handlon Deposition at p. 75. Thus, Plaintiff's claim that her hours were reduced does not form the basis of an adverse employment action.

Thus, Mr. Carpenter is not a similarly situated employee.[6] Because Plaintiff has failed to establish a *prima facie* case of discrimination, her racial discrimination claim must fail.

Even assuming that Plaintiff could make out a *prima facie* case of discrimination, she is not necessarily entitled to a trial. After a plaintiff makes out a *prima facie* case, the burden shifts to the defendants to articulate a "legitimate, nondiscriminatory reason" for the adverse action. *Burdine*, 450 U.S. at 252-53. Defendants have proffered that Plaintiff was terminated for stealing hydrocodone, thus satisfying Defendants' burden of articulating a legitimate reason for terminating Plaintiff.

Plaintiff would still be able to defeat Defendants' Motion for Summary Judgment on the discrimination claim if Plaintiff could demonstrate that Defendants' stated reason for terminating Plaintiff is merely a pretext. *Burdine*, 450 U.S. at 256. To establish pretext, a plaintiff may show "that the proffered reason '(1) has no basis in fact; (2) did not actually motivate the adverse employment action; or (3) was insufficient to warrant the adverse action.'" *Sybrandt v. Home Depot, U.S.A., Inc.*, 560 F.3d 553, 558 (6th Cir. 2009) (quoting *Ladd v. Grand Trunk W. R.R., Inc.*, 552 F.3d 495, 502 (6th Cir. 2009)).

Plaintiff argues that the investigation was faulty and that she was not in fact stealing hydrocodone. It is irrelevant, however, whether Plaintiff was *actually* stealing hydrocodone for purposes of this analysis. It only matters whether Defendants had an honest belief in their proffered nondiscriminatory reason for terminating Plaintiff. *Sybrandt*, 560 F.3d at 559. In determining

---

[6] Furthermore, Rite Aid management terminated Mr. Carpenter based on suspicion that Mr. Carpenter was stealing from the pharmacy. Thus, even if Mr. Carpenter was a similarly situated employee, Plaintiff cannot establish that Rite Aid treated her differently than Mr. Carpenter, as both were terminated for suspicion of stealing from the pharmacy.

11

whether Defendants had an honest belief, the Court assesses whether Defendants "made a reasonably informed and considered decision before taking the complained-of action." *Id.* (citations omitted).

Defendants initially targeted Mr. Carpenter as the focus of the investigation. Defendants installed surveillance cameras and reviewed the footage. Defendants also engaged in manual counts to determine whether any drugs were missing. Defendants observed Plaintiff engage in what Defendants considered to be suspicious activity, and then attempted to interview Plaintiff regarding that activity. Defendants terminated Plaintiff for suspected theft, as well as refusing to participate in the investigation on-site. The Court concludes, based on the totality of circumstances, that Defendants held an honest belief that Plaintiff was stealing hydrocodone.

Plaintiff cannot establish a *prima facie* case of discrimination. Even if Plaintiff had established a *prima facie* case of discrimination, she cannot establish that Defendants' articulated reason for terminating Plaintiff was merely a pretext. Accordingly, Plaintiff's discrimination claim fails.

### D.     Retaliation

Plaintiff seeks relief under both Title VII and the Elliot Larsen Civil Rights Act (ELCRA). Plaintiff, however, is required to exhaust her administrative remedies for a Title VII retaliation claim before bringing suit in federal court. *Love v. Pullman Co.*, 404 U.S. 522, 523 (1972) ("A person claiming to be aggrieved by a violation of Title VII . . . may not maintain a suit for redress in federal court until [s]he has first unsuccessfully pursued certain avenues of potential administrative relief."). In the instant case, Plaintiff initiated a charge of discrimination with the Equal Employment Opportunity Commission (EEOC). Although Plaintiff initiated the charge of discrimination after

Rite Aid terminated her, the charge does not include a retaliation claim. Accordingly, the Court does not have jurisdiction over Plaintiff's Title VII retaliation claim. *Strouss v. Michigan Dep't. of Corrs.*, 250 F.3d 336, 342 (6th Cir. 2001).

To establish a *prima facie* case of retaliation under ELCRA, Plaintiff must demonstrate by a preponderance of evidence that (1) Plaintiff engaged in protected activity, (2) Defendants knew Plaintiff engaged in the protected activity, (3) Defendants subsequently took an employment action adverse to Plaintiff, and (4) a causal connection between the protected activity and adverse employment action exists. *Garg v. Macomb Cnty. Comm. Mental Health Servs.*, 472 Mich. 263, 273 (2005).

Plaintiff proffers three activities in which she engaged that she submits were protected: (1) when she complained to the pharmacy manager that Plaintiff was being discriminated against, (2) when Plaintiff complained to the store manager about Plaintiff's hours being cut and being yelled at in front of customers, and (3) when Plaintiff wrote a letter to Mr. K. that a co-worker had disrespected Plaintiff.

"In order to engage in a protected activity, a plaintiff must make an overt stand against suspected illegal discriminatory action." *Lockett v. March USA, Inc.*, 354 F.App'x 984, 997 (6th Cir. 2009)[7] (internal citations and quotations omitted). Neither Plaintiff's complaint to the store manager about Plaintiff's hours being cut[8] and being yelled at in front of customers nor Plaintiff's

---

[7] The Sixth Circuit analysis in *Lockett* is based on Ohio law. The elements of a *prima facie* case of retaliation, however, are the same under Ohio law as they are under Michigan law. *See Lockett*, F.App'x at 997.

[8] In fact, as noted *supra*, Plaintiff's hours at Rite Aid were not cut, just her hours in the pharmacy area.

13

letter to Mr. K. that a co-worker had disrespected Plaintiff allege any form of discrimination. Thus, they do not constitute an overt stand against discrimination.

Defendants argue that Plaintiff's complaint to the pharmacy manager that Plaintiff was being discriminated against did not allege illegal discriminatory action. In the complaint to the pharmacy manager, Plaintiff asserted that she felt discriminated against because a co-worker asked Plaintiff about the race of Plaintiff and the race of Plaintiff's children. As Defendant contends, this does not constitute illegal discriminatory action. In Plaintiff's deposition, however, she states that she did not go to the pharmacy manager until about a month after the incident where a co-worker asked about Plaintiff's and Plaintiff's children's race. Plaintiff also states that she complained that she was being discriminated against because of the race of her children. Viewing the evidence in the light most favorable to Plaintiff, the Court cannot conclude that the incident where a co-worker asked about Plaintiff's and Plaintiff's children's race was the only basis for Plaintiff's complaint to the store manager, and therefore cannot conclude Plaintiff did not allege illegal discriminatory action. Plaintiff, however, provided no specificity as to the discrimination to which she was subjected. "Vague charges of discrimination do not invoke the protection of the law." *Lockett*, 354 F.App'x at 997 (citations omitted). Accordingly, Plaintiff has failed to establish a *prima facie* case of retaliation because she cannot show that she engaged in protected activity.

Moreover, Plaintiff cannot establish a causal connection between the protected activity and adverse employment action. In her deposition, Plaintiff concedes that she does not have any evidence of a causal connection other than that she was terminated four months after engaging in the alleged protected activity. Unless the employer retaliates almost immediately upon learning of the protected activity, temporal proximity, unless coupled with other indicia of retaliatory conduct,

14

is insufficient to find a causal connection. *Mickey v. Zeidler Tool and Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008). Accordingly, Plaintiff has failed to establish a *prima facie* case of retaliation.[9]

### E. Racially Hostile Work Environment

To establish a *prima facie* case of a racially hostile work environment, Plaintiff must establish that (1) she belonged to a protected group, (2) she was subject to unwelcome harassment, (3) the harassment was based on race, (4) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment, and (5) Defendants knew or should have known about the harassment and failed to act. *Williams v. CSX Transp. Co., Inc.*, 343 F.3d 502, 511 (6th Cir. 2011).[10]

Plaintiff complains of two incidents to support her claim of a racially hostile work environment: the incident in which a co-worker asked about Plaintiff's and Plaintiff's children's race, and a co-worker allegedly calling Plaintiff "ghetto." Although Plaintiff may genuinely have been offended, the two isolated incidents do not establish that the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment. The severe or pervasive component of the *prima facie* case "requires the court to examine, under the totality of the circumstances, the frequency of the discriminatory conduct; its severity; whether it was physically threatening or humiliating, or a mere offensive utterance; and

---

[9] Even if Plaintiff could make out a *prima facie* case of retaliation, she would not be entitled to a trial on the issue. A retaliation claim is analyzed under the same burden-shifting analysis as a discrimination claim. *See Lewis v. Quaker Chemical Corp.*, 229 F.3d 1152, at *7 (6th Cir. 2000). As discussed above, Plaintiff cannot establish that Defendants' articulated reason for terminating Plaintiff was merely pretext.

[10] A *prima facie* case of a racially hostile work environment under Michigan law requires demonstrating the same five elements. *See Quinto v. Cross and Peters Co.*, 451 Mich. 358, 398-69 (1996).

whether it unreasonably interfered with an employees performance." *Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 707 (6th Cir. 2007) (internal quotations omitted). The Court finds that the incidents to which Plaintiff points are mere offensive utterances. Therefore, the Court grants Defendants' Motion for Summary Judgment as to the racially hostile work environment claim.[11]

### F. Intentional Infliction of Emotional Distress

Under Michigan law, the elements of intentional infliction of emotional distress are (1) extreme or outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress. *Webster v. United Auto Workers, Local 51*, 394 F.3d 436, 442 (6th Cir. 2005). "In ruling on such a claim, 'it is initially for the [trial] court to determine whether the defendant's conduct reasonably may be regarded as so extreme and outrageous as to permit recover.'" *Id.* (quoting *Doe v. Mills*, 212 Mich.App. 73, 92 (1995)). Plaintiff contends that Defendants' conduct of falsely accusing Plaintiff of criminal conduct was extreme and outrageous.[12] The Court disagrees. "The threshold for showing extreme and outrageous conduct is high." *VanVaorous v. Burmeister*, 262 Mich.App 467, 481 (2004). Plaintiff does not have a claim for intentional infliction of emotional distress because the Court finds, as a matter of law, that Defendants' conduct was not "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be

---

[11] "Although the question of whether conduct is severe or pervasive is quintessentially a question of fact," the Sixth Circuit has "affirmed grants of summary judgment, determining that as a matter of law, the conduct complained of was not sufficiently severe or pervasive." *Clay*, 501 F.3d at 707.

[12] In her deposition Plaintiff also argues that Defendant Tevis caused Plaintiff emotional distress by asking about Plaintiff's black "baby daddies" and black boyfriends. Plaintiff's knowledge of this is based solely on what Mr. Carpenter told Plaintiff. Moreover, even if Defendant Tevis had asked Plaintiff directly, it would not rise to the level of conduct required for a claim of intentional infliction of emotional distress.

regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (quoting *Roberts v. Auto-Owners Ins. Co.*, 422 Mich. 594, 602 (2004)). As such, Plaintiff's claim of intentional infliction of emotional distress fails.

## IV. CONCLUSION

Officer Rumley had probable cause to arrest Plaintiff, even when the allegedly false statement made by Defendant Tevis that the theft occurred that day is disregarded. Additionally, Plaintiff has not presented any evidence that Defendant Tevis made the statements to Officer Rumley with actual malice, as required to overcome the qualified privilege. Plaintiff cannot establish that she was treated differently than similarly situated employees. Even if she could, she cannot establish that Defendants' articulated reason for terminating Plaintiff was merely pretext. The activities in which Plaintiff engaged were not protected, nor can Plaintiff establish a causal connection between the protected activity and adverse employment action. Moreover, the statements to which Plaintiff points are mere offensive utterances. Lastly, Defendants' conduct of falsely accusing Plaintiff of criminal conduct was not extreme and outrageous. Accordingly, the Court GRANTS Defendants' Motion for Summary Judgment.

IT IS SO ORDERED.

s/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated: February 8, 2012

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on February 8, 2012.

                                                    s/Denise Goodine
                                                    Case Manager